Mr. Justice Huger
delivered the opinion of the Court.
I thought on the trial of this case below, that the plaintiff ought not to be injured, if possible, by the negligence of an officer of the Court, and the effects of a division of Washington district. They were not only minors at the time of the division, but had they been of age, could not have prevented the. destruction of the records, as over them they could not have exercised any control. The loss of the writ, declaration and pleadings, in my opinion, was sufficiently accounted for to admit of the inferior evidence afforded by the journals, and in this opinion all my brethren concur.
The first ground involves two questions :
1st. The statute having commenced running in the lifetime of the ancestor, was it arrested by the minority ofhis -children ? And
itadly. If it could not, was it arrested by the action *141 commenced in his life time, and which abated at his death l The first is “ quest!o vexata,” and has for some time divided this Court. In the case of Fassoux and Prather. (1 Nott & M'Cord’s Rep. 296,) it was ruled by a majority of the judges, then present, that the statute having once commenced running, was not arrested by a subsequent disability. It is known however that the Judges were then, and are now supposed to be equally divided on that question. Had I been a member of the Court at that time, I should probably have regarded my self as bound by the prior decision in Rose & Daniel, in which it was ruled that a subsequent disability did arrest the statute. I shall always feel great reluctance in overruling a decision of this Court. If its decrees are not to be regarded as unalterable, they ought at least to be touched with great caution, and only reversed for the most urgent reasons.— Such acts of the legislature as repeal former laws, are only prospective in their operation. A new rule established by this-Court, must always have an ex post facto operation. An act declares what shall thereafter be the'law — a dec!» tsion of this Court what has been the law. It is better never to reverse a decision than to do so frequently. Under existing circumstances, however, I feel myself at liberty to adopt cither rule. If, indeed, there be any consideration, independent of intrinsic merit, in favor of either, it must be for the last. Faysoux & Prather has gone forth as the last decision of this Court, and the community have regarded it as the settled rule. I think too there is na common law Court, either in England or in America, which has decided differently. I have searched and can find no case but that of Rose & Daniel, in which the contrary opinion has been held as settled. All the American acts appear to have followed the statute of James. Where any difference is apparent, it is verbal and not substantial, and our own act does not differ more from the statute of James than the American acts generally. The same object appears to have been sought in all — the repose of society. It is only consistent with the wisdom of those who *142 framed these acts, to believe that it was their intention fca throw into total oblivion, all transactions’beyond a certain date, and thus periodically to relieve society from much perplexity and trouble.
Give to these acts however, the construction contended for in Rose Daniel, and great would be the evils left, unremidied evils that would frequently baffle the most cautious, and constantly involve the unweary.
It is true that under the other rule, injustice will some» times occur. This must be the case with all general rules,
I am satisfied that much more is to be apprehended from the rule in Rose Daniel, than that in Faysoux in Prather. At least such appears to have been the opinion of those who have legislated, both in England and America; for however we may doubt with regard to the meaning of our own act, we can not doubt that the statute of James, and the acts of the different, states have been correctly construed by English and American Courts; and by all of them,. (as I have before said,) it has been decided that whén the . statute once commences to run, it is not arrested by a subsequent disability. . • ■
I have been induced to express an opinipn on this point, rather from a wish to give all the stability I can to th'e de- ■ cisión in the case of Faysoux & Prather, than from its importance to this case. I decided below, that the action commenced by Ray, and which had abated by his death, had stopped the statute, and that his heirs, who were minors, were not barred before thpy arrived at the age of twenty-one.
An action having been brought by Ray¿ it was not rün-, ning when he died. He had been diligent in asserting his right; and no possible laches could be imputed to him. Had he lived to this moment, and things had remained as they were at his death,/ defendants plea could not have availed him. The death of Ray was the act of God, from which no one can suffer. (See 3 Caines’ Rep. 206.) Nor can they suffer from any act not their own. (See Mathew & Phillips, 2 Salkeld 424; and 2 Strange 719.) They *143 can only suffer for their own laches, and of this they were not guilty. They brought their action soon after they were of agé, and before that time they could not.
McDuffie, for the motion.
Parle &? Davis, contra.
It has been frequently held, that where the creditor brought an action within the time, but died before the suit Was ended, but after the statutary time had expired, the executor had at least one year to renew the suit. (See 3 Caines Rep.) And where the suit has' been retarded by contests about the will, a longer time has been allowed to the executor. (See 3 Caines Rep. 2 Salkeld, and 2 Strange, 907.) If difficulties excuse an executor, impossibilities must protect a minor.
The motion is dismissed.
Justices Nott and Johnson, concurred.